IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| In the Matter of<br><br>KIMI R., by and through her Parent, MALIA V.,<br><br>        Plaintiffs,<br><br>   vs.<br><br>DEPARTMENT OF EDUCATION, STATE OF HAWAII,<br><br>        Defendant. | CIVIL NO. 14-00165 DKW-RLP<br><br>**ORDER AFFIRMING THE DECISION OF THE ADMINISTRATIVE HEARINGS OFFICER** |

**ORDER AFFIRMING THE DECISION OF THE
ADMINISTRATIVE HEARINGS OFFICER**

     This appeal concerns the administrative hearings officer's ("AHO") determination of Kimi R. ("Student") and Malia V's ("Parent") request for due process following the issuance of Student's March 15, 2013 Individualized Education Program ("IEP") for the 2013-14 school year. Because Parent has not shown by a preponderance of the evidence that the AHO's March 7, 2014 decision should be reversed, the Court affirms that decision. The IEP team possessed and utilized data and information related to Student's then-current performance and program at ABC School and sufficiently evaluated Student. Parent has failed to

show that this information was inaccurate or led to an inappropriate program in the IEP to address Student's condition and needs. Further, Parent has provided insufficient evidence to controvert that the IEP addressed Student's present achievement level and needs and set appropriate goals and objectives.

## BACKGROUND

Parent previously requested an impartial due process hearing for the IEPs drafted in April of 2009, 2010, and 2011. The AHO concluded that the IEPs for those years denied Student a Free and Appropriate Public Education ("FAPE"). The present appeal does not include those earlier IEPs or the AHO's earlier decisions; instead, this appeal involves only the decision of the AHO reviewing a separate due process request made by Parent relating to the March 15, 2013 IEP.

Student was 13 years old at the time of the AHO's March 7, 2014 decision. She has been eligible to receive special education and related services pursuant to the IDEA because she has Rett's syndrome. Student attended Mililani Middle School (the "home school") for most of her sixth grade year in 2011–2012, when Parent moved Student to ABC School, a private school. March 7, 2014 Decision ("Decision") at 4.

The March 15, 2013 IEP, which was prepared prior to Student's eighth grade year, provided Student with special education, occupational therapy, speech and language therapy, transportation, and a variety of other supplementary aids and

2

services, program modifications, and supports. The IEP also provided Student with an extended school year ("ESY") that included special education services only (e.g., no occupational therapy or speech/language therapy) for any breaks longer than 4 calendar days. Pet. Ex. 3 (IEP) at 023. In terms of placement, the IEP provided that:

> [Student] will receive specialized instruction in the special education setting for math, language arts, science, social studies, and advisory due to her difficulties in reading, writing, and math. [Student] will receive specialized support in the general education setting for her wheel classes, her elective classes, field trips, lunch, recess, and any other non-academic activities. [Student] will receive specially designed instruction in the public school.

Pet. Ex. 3 (IEP) at 025.

On July 22, 2013, Parent filed her request for due process hearing to review the March 15, 2013 IEP. After hearings on December 9–12, 2013, the AHO issued a decision on March 7, 2014, concluding that:

> Petitioners have not shown that procedurally and substantively, the March 15, 2013 IEP denied Student a FAPE. Specifically, Petitioners have not shown that:
>
> - Student's March 15, 2013 IEP PLEPs were inaccurate, and the DOE did not have adequate information when developing the IEP;
> - The goals and objectives in the IEP were not measurable and inappropriate;
> - That the program and placement offered was not appropriate to meet Student's needs;
> - That parental participation was denied; and
> - That the ESY services offered were inappropriate.

3

Decision at 28.

Parent's appeal of the AHO's decision is presently before the Court.

## **STANDARD OF REVIEW**

I. **IDEA Overview**

"The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to public education and providing financial assistance to enable states to meet their educational needs." *Hoeft ex rel. Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1300 (9th Cir. 1992) (citing *Honig v. Doe*, 484 U.S. 305, 310 (1988)). It ensures that "all children with disabilities have available to them a free appropriate public education [("FAPE")] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]" 20 U.S.C. § 1400(d)(1)(A). The IDEA defines FAPE as special education and related services that --

> (A) have been provided at public expense, under public supervision and direction, and without charge;
> (B) meet the standards of the State educational agency;
> (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and
> (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(9). To provide a FAPE in compliance with the IDEA, a state educational agency receiving federal funds must evaluate a student, determine

4

whether that student is eligible for special education, and formulate and implement an IEP. 20 U.S.C. § 1414. The IEP is to be developed by an "IEP Team" composed of, *inter alia*, school officials, parents, teachers and other persons knowledgeable about the child. 20 U.S.C. § 1414(d)(1)(B).

"Procedural flaws in the IEP process do not always amount to the denial of a FAPE." *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 909 (9th Cir. 2009) (citations omitted). Once a procedural violation of the IDEA is identified, the court "must determine whether that violation affected the substantive rights of the parent or child." *Id.* (citations omitted). "[P]rocedural inadequacies that result in the loss of educational opportunity, or seriously infringe the parents' opportunity to participate in the IEP formulation process, clearly result in the denial of a FAPE." *Id.* (alteration in original) (citations and quotation marks omitted).

Compliance with the IDEA does not require school districts to provide the "absolutely best" or "potential-maximizing" education. *J.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 439 (9th Cir. 2010) (citation and internal quotation marks omitted). Rather, school districts are required to provide only a "'basic floor of opportunity.'" *Id.* (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 201 (1982)). The FAPE need only be "appropriately designed and implemented so as to convey [the][s]tudent with a meaningful benefit." *Id.* at 433 (citations and quotation marks omitted).

## II. <u>Standard of District Court Review</u>

The standard for district court review of an administrative decision under the IDEA is set forth in 20 U.S.C. § 1415(i)(2)(C), which provides:

In any action brought under this paragraph, the court—

> (i) shall receive the records of the administrative proceedings;
>
> (ii) shall hear additional evidence at the request of a party; and
>
> (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

This standard requires that the district court give "'due weight'" to the administrative proceedings. *Capistrano*, 556 F.3d at 908 (quoting *Rowley*, 458 U.S. at 206) (some citations omitted). The district court, however, has the discretion to determine the amount of deference it will accord the administrative ruling. *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 438 (9th Cir. 2010) (citing *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987)). In reaching that determination, the court should consider the thoroughness of the hearings officer's findings, increasing the degree of deference where said findings are "'thorough and careful.'" *Capistrano*, 556 F.3d at 908 (quoting *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995)).

The district court should give "substantial weight" to the hearings officer's decision when the decision "evinces his careful, impartial consideration of all the evidence and demonstrates his sensitivity to the complexity of the issues

6

presented." *Cnty. of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1466–67 (9th Cir. 1996) (citation and quotation marks omitted). Such deference is appropriate because "if the district court tried the case anew, the work of the hearing officer would not receive 'due weight,' and would be largely wasted." *Wartenberg*, 59 F.3d at 891. "[T]he ultimate determination of whether an IEP was appropriate," however, "is reviewed de novo." *A.M. ex rel. Marshall v. Monrovia Unified Sch. Dist.*, 627 F.3d 773, 778 (9th Cir. 2010) (citing *Wartenberg*, 59 F.3d at 891).

> A court's inquiry in reviewing IDEA administrative decisions is twofold:
>
> First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? [*Rowley*, 458 U.S. at 206–07] (footnotes omitted). If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more. *Id.* at 207.

*J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938, 947 (9th Cir. 2010) (some citations omitted).

The burden of proof in IDEA appeal proceedings is on the party challenging the administrative ruling. *Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1103 (9th Cir. 2007) (citations omitted). The challenging party must show, by a preponderance of the evidence, that the hearing decision should be reversed. *J.W.*, 626 F.3d at 438 (citation omitted).

# DISCUSSION

Parent asserts that the AHO was incorrect in concluding that the March 15, 2013 IEP did not deny Student a FAPE. Specifically, Parent contends that: (1) the DOE failed to conduct or obtain current evaluations to address Student's needs, particularly in addressing her Rett's syndrome and her speech needs; and (2) the Present Levels of Educational Performance ("PLEPS") section of the IEP was inappropriate, resulting in goals and objectives that did not address Student's needs. The Court concludes that Parent has not satisfied her burden of showing that the decision should be reversed for either of the aforementioned reasons and affirms the decision. Each of Parent's contentions on appeal is discussed in turn below.

## I.      Evaluation of Student

Parent contends that the DOE "failed to conduct or obtain current evaluations for Kimi's needs, including for Rett Syndrome, speech, communication or behavioral needs consistent with her disability." Opening Br. at 7. On this issue, the AHO determined that:

> [T]he evidence showed that the March 15, 2013 IEP was developed through 2 meetings, on February 26, 2013 and March 15, 2013. At the February 26, 2013 meeting, Student's PLEPS were discussed. As noted above, the autism coach testified that the DOE had a Rett specialist, the district educational specialist, at the IEP meetings to assist the IEP team. According to the autism coach, the interventions for both students with autism and with Rett's go hand-in-hand; that is, they are the same.

> It is also noted that Student did not have behavioral issues that had to be addressed in her IEP. In fact, it is noted that Student's desire to be social is her strength.
>
> Further, as Respondent argues in its closing brief, Petitioners have not proven that the DOE required more current assessment information in its programming for Student. Petitioners did not put forth any speech or occupational therapy personnel to challenge the appropriateness of the PLEPS or the goals and objectives in these areas.
>
> The Hearings Officer concludes that Petitioners have not shown that the DOE failed to evaluate, appropriately, all areas of suspected disability. Further, Petitioners have not shown that the PLEPs in the March 15, 2013 IEP were inaccurate or relied upon old information. Rather, in developing the March 15, 2013 IEP, the IEP team considered both Student's performance in the past as well as her current performance at the private school.

Decision at 17–18. The Court agrees with the AHO that Parent has not shown that the DOE's evaluation of Student was insufficient.

Parent relies heavily on an earlier AHO decision for the 2009, 2010, and 2011 IEPs which concluded that the DOE denied Student a FAPE. While that decision is instructive of Student's history, it does not dictate a determination in the present case. As noted by the AHO, the March 15, 2013 IEP was developed based on information obtained from ABC School and also information obtained from Student's time spent at Mililani Middle School, prior to transferring to ABC School. None of these evaluations, observations, or other data from either ABC or Mililani Middle, played any part in the challenges to the 2009, 2010, and 2011 IEPs.

9

Although Parent argues that Student needed to be comprehensively evaluated to identify all of her needs and that the DOE failed to do that, counsel for Parent argued at the hearing that Parent was not seeking a medical diagnosis or medical evaluation of Student. This leaves only evaluations related to Student's recent performance, skills, and needs. Parent has simply failed to show that all of the information that the IEP team was provided with, by both ABC School and by the individuals who worked with Student at Mililani Middle School the year prior, did not contain the type of evaluative information to inform the IEP team to plan services to meet Student's needs.[1]

The Court agrees with Parent that more specific information as to Student's stage of Rett Syndrome would provide an additional guidance to the IEP team for planning Student's services.[2] But simply pointing to the lack of that specific

---

[1] Parent argues extensively that Dr. Lasco was not an "expert" in Rett Syndrome and that he only observed Student once. While it would always be better to have more information (e.g., extensive observations and consultations with other providers) and opinions from the most knowledgeable experts on a particular condition, the record establishes that Dr. Lasco was sufficiently experienced with Rett Syndrome, that he observed Student, and that he provided information to the IEP team specific to Student's condition. As the AHO noted, Dr. Lasco testified that the program for Student was based on her needs, and not directly associated with her diagnosis alone. Decision at 14. The Court concludes that Dr. Lasco was sufficiently familiar with Rett Syndrome and educational programming for Rett Syndrome students.

[2] In the decision addressing the 2009, 2010, and 2011 IEPs, the AHO determined that this type of specific assessment of stage in Rett Syndrome, as well as an autism assessment, would have been "useful." March 13, 2012 Decision at 38. The Court agrees that such a specific assessment (i.e., identifying what stage of Rett Syndrome Student is presently functioning in) would be useful. However, given the posture of this case on appeal, and Parent's burden as the appealing party to show that the AHO's decision must be reversed, the Court cannot reverse the decision based simply on the lack of this specific evaluation, in light of all the information that was at the IEP

information does not satisfy Parent's burden to show that the March 15, 2013 IEP was in fact inappropriate to meet Student's needs. In other words, even if more specific Rett Syndrome data for Student was available, there is no evidence to suggest that Student's IEP would look any different. Accordingly, the Court concludes that the evaluations and assessments utilized by the IEP team were sufficiently current in that they incorporated data from Student's current performance at ABC School and Student's prior year at Mililani Middle School. Additionally, Parent has not satisfied her burden of showing that these assessments did not adequately address Student's needs. The Court agrees with the AHO when he made the following determination:

> The Hearings Officer concludes that Petitioners have not shown that the program and placement offered by the DOE through the March 15, 2013 IEP was inappropriate to address Student's needs. Although Petitioners allege that the DOE failed to offer a Rett specific program, an appropriate behavioral program, and an appropriate communication program, the evidence showed that Rett's syndrome presents like autism. Therefore, the educational programming for children with Rett's syndrome is similar to that of children with autism. As testified by the district educational specialist and the autism coach, the DOE's Pookela Project was specifically designed to meet the needs of severely disabled students. Further, as testified by the district educational specialist, educational programming is not based upon a diagnosis, but, rather, upon the needs and strength of the student. As testified by the autism coach and the speech-language pathologist, the

---

team's disposal. Parent has provided no evidence to suggest that such an evaluation would have resulted in an IEP substantially different from the one that was created based on the information available, or would have resulted in information differing from that provided by the DOE specialist familiar with Rett Syndrome.

March 15, 2013 IEP was created to address Student's strengths and needs.

Decision at 24.

Even assuming that additional assessments were needed, the Court determines that this would only amount to a procedural defect that did not result in the loss of educational opportunity for Student. Although Parent makes a conclusory argument that Student suffered a loss of educational opportunity because of insufficient evaluations of Rett Syndrome and Student's behavior, there is no evidence to actually support any loss of educational opportunity. *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 909 (9th Cir. 2009). The IEP team was well aware of Student's Rett Syndrome, and any accompanying issues and behaviors. The IEP team had full input from the educators and providers at ABC School, and the counterparts for the DOE who had worked with Student at Mililani Middle School the prior year. The Court is not convinced that the DOE did not sufficiently conduct the necessary assessments and consider the relevant information to provide Student with adequate services and develop a sufficiently appropriate IEP.

## II. **PLEPS and Goals and Objectives**

Parent contends that the IEP fails to specifically describe and set forth Student's present achievement levels, needs, and measurable goals. The DOE counters that the PLEPS and the objectives were developed using the most current

information, assessments, and data available on Student and provide an accurate and thorough description of Student's achievements, needs, and goals. The Court agrees with the DOE.

An IEP is required to have, among other things: "[a] statement of the child's present levels of academic achievement and functional performance"; "[a] statement of measurable annual goals, including academic and functional goals"; and "[a] description of . . . [h]ow the child's progress toward meeting the annual goals . . . will be measured . . . and . . . [w]hen periodic reports on the progress the child is making toward meeting the annual goals . . . will be provided." 34 C.F.R. § 300.320(a)(1)–(3).

The Hearings Officer correctly determined that the PLEPS in the IEP sufficiently state Student's present level of achievement and performance and identify goals that were measurable and appropriate. Decision at 18–19. The PLEPS adequately detail Student's present levels of educational performance, needs, and strengths in the areas of speech-language/communication, occupational therapy, math, language arts, and behaviors. Pet. Ex. 3 (IEP) at 008–011.

For example, Parent argues at length that the PLEP for Student's speech and language was outdated and that her speech and language needs are not addressed by the goals and objectives. In the information regarding Student's therapy at ABC School during the 2012–2013 school year, the PLEP states, in part, that:

> When [Student] arrived at private school, her requests were not appropriate for what she was requesting. She had lots of articulation difficulties. [Student] tended to vocalize something she wanted that was not present. After the vocalization, she would not move to get the item she wanted. Private school has been working on the precision of [Student]'s requests such as having her point to the item she would like. They are also working on requesting based on sounds, work approximations, and whole words.

Pet. Ex. 3 (IEP) at 008. Because of the statement that Student has "lots of articulation difficulties," Parent contends that the IEP denied Student FAPE because it does not provide a goal or objective to address those articulation issues. However, at the administrative hearing, Mr. Cabra, the DOE speech-language pathologist, gave the following explanation:

> Q. Did you work on articulation issues?
> A. We worked on articulation, yes. But we didn't have a goal and objective for it necessarily.
> Q. Why is that?
> A. Because her cognitive functioning is so low. She's about a year and a half to two years old. She has all the articulation structures that a typical two-year old would have in place. And she actually had a couple that were beyond that two-year mark. So, you know, to teach a student with cognitive functioning as a two-year old, to teach them later developing sound, it doesn't make too much sense because they're not cognitively ready for those sounds yet.
> Q. So if I understand you correctly, are you saying she didn't have articulation issues given her level of ability?
> A. Correct, correct.
> Q. Cognitively?
> A. Correct, cognitively.

Tr. Vol. 3:474. The Court sees nothing inconsistent between the statement in the PLEP that Student has articulation issues and Mr. Cabra's testimony. Mr. Cabra's

14

testimony explained that although Student might manifest articulation issues, there were precursor speech-language issues, namely cognitive issues, that Cabra opined should be addressed. Parent has not provided any evidence to controvert Cabra's testimony and the Court sees no reason to question it. Further, all other key information in the PLEP (from both ABC School and Mililani Middle School) related to Student's speech-language performance is appropriately addressed in the IEP's goals and objectives.

The IEP, together with Cabra's testimony, show that the IEP team addressed Student's speech-language needs and set appropriate goals and objectives. That the IEP team chose to adopt Cabra's view of Student's articulation difficulties is a discretionary IEP team decision that the Court will not second guess. "'[T]he IDEA accords educators discretion to select from various methods for meeting the individualized needs of a student, provided those practices are reasonably calculated to provide him with educational benefit.'" *S.M. v. DOE*, 808 F. Supp. 2d 1269, 1279 (quoting *R.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1122 (9th Cir. 2011)). The IEP addressed Student's needs and in a way that provided her with educational benefit.

## **CONCLUSION**

The Administrative Hearings Officer's March 7, 2014 decision is hereby AFFIRMED.

IT IS SO ORDERED.

DATED: February 4, 2015 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

KIMI R., et al. v. DOE; CV 14-00165 DKW-RLP; ORDER AFFIRMING THE DECISION OF THE ADMINISTRATIVE HEARINGS OFFICER